[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the plaintiff's motion for contempt alleging that the defendant has failed to comply with a judgment of the court ordering the defendant to convey certain pieces of real estate to the plaintiff.
The plaintiff contends that a partial judgment, dated November 20, 1994, and entered by Judge Rittenband, obligated the defendant, inter alia, to transfer to the plaintiff two parcels of land and that the defendant has wilfully refused to do so. The defendant counters that he was only obligated to execute quitclaim deeds transferring the two parcels to the plaintiff and that the deeds were to be held in escrow delaying delivery and recording of the deeds until certain adjustments and offsets were determined by an attorney trial referee at a later date. The defendant has executed CT Page 9202 the deeds which are held in escrow by his counsel.
The procedural history pertinent to these contentions is convoluted and confused. On September 28, 1993, following three days of concerted pretrial discussions among the parties and Judge Hammer, the parties reached an agreement resolving some of the disputes which formed the basis for the lawsuit. The agreement was recited on the record and included a provision that a "stipulated judgment" disposing of the first count of the complaint should enter. This judgment would order the defendant to convey two pieces of land to the plaintiff in exchange for the plaintiff's interest in another parcel of land and corporate stock. Counsel for the plaintiff stated that as part of the agreement "[t]he execution of said deeds will take place forthwith and recording thereof will be held in escrow until such time as a determination may be made by an attorney trial referee as to certain accounting or adjustment disputes that still remain unresolved as between the parties," (September 28, 1993 transcript, p. 3).
Judge Hammer then asked defense counsel if plaintiff's counsel had correctly recited the agreement. Defense counsel replied that the recitation was correct, and he reiterated that "[t]he intent of the parties is that the conveyance should be executed but not recorded until the adjustments between the parties for value and for credits and offsets are determined by the attorney trial referee, and the purpose of not recording the deeds is obviously to secure the appropriate payment of adjustments," (September 28, 1993 transcript, p. 4).
On that date, Judge Hammer orally entered judgment as to the first count of the complaint in accordance with the agreement as related to him by the parties (September 28, 1993 transcript, p. 9).
On May 17, 1994, Judge Hammer entered "an order" incorporating the agreement between the parties (May 17, 1994 transcript, p. 7). This order was characterized as a "reaffirmation" of the September 23, 1993, agreement (May 17, 1994 transcript, p. 5).
On November 16, 1994, the plaintiff filed a "motion for entry of partial judgment" requesting that the court issue an order "conforming to the previous agreement of record entered on, September 23, 1993 [sic] and reaffirmed by the court on May 17, 1994," to wit: [t]he defendant shall transfer his interest to the plaintiff in the real estate." On November 20, 1994, this motion CT Page 9203 was granted by Judge Rittenband who entered a judgment ordering the defendant to "transfer his interest to the plaintiff in the real estate." No reference to the escrow provision and delay of delivery and recording, pending a determination by the attorney trial referee, as contained in Judge Hammer's judgment of September 28, 1993 is recited in Judge Rittenband's judgment of November 20, 1994.
On May 29, 1995, the plaintiff filed a "motion for order" asking the court to compel the defendant to execute and deliver the quitclaim deeds. On April 10, 1995, this motion was granted by Judge Rittenband. Again, no reference to holding the deeds in escrow until the adjustments and offsets were determined was made. The order of the court did specify that the defendant had to comply with its judgment by May 15, 1995.
On June 2, 1995, new defense counsel appeared. On June 8, 1995, the plaintiff filed another "motion for order" again seeking an order requiring the defendant to deliver quitclaim deeds to the plaintiff. On June 19, 1995, the court, Sferrazza, J., ordered the defendant to comply with Judge Rittenband's order of April 10, 1995, by July 1, 1995.
On June 26, 1995, the defendant filed a "motion for clarification," which the court, Sferrazza, J., construed as a motion to reargue the June 8, 1995, motion for order. The court declined to permit reargument.
On July 21, 1995, the plaintiff filed the present motion for contempt and sanctions in an effort to enforce Judge Rittenband's judgment. As noted above, the court finds that the defendant has executed the quitclaim deeds but has refused to deliver the deeds to the plaintiff. The deeds are held in escrow by defense counsel.
 I
It is clear that when Judge Rittenband entered partial judgment pertaining to the first count of the complaint on November 20, 1994, he was unaware that Judge Hammer had already entered a somewhat different judgment as to that count at an earlier date. The review of the transcript for that date discloses that neither party apprised Judge Rittenband of Judge Hammer's oral decision entering judgment as to that count. Judge Rittenband's decision was never styled or characterized as a modification or vacation of the earlier judgment. More than four months having elapsed after CT Page 9204 Judge Hammer's judgment, it is doubtful Judge Rittenband could have validly opened Judge Hammer's judgment even if he had been requested to do so, General Statutes § 52-212a; Practice Book § 326; and CFM of Connecticut v. Chowdhury, 38 Conn. App. 745 (1995). Judge Rittenband's entry of judgment was in response to the plaintiff's motion for entry of partial judgment. Thus, the court must determine the validity, if any, of the later judgment, which, did not ostensibly modify or vacate the earlier judgment.
This issue appears to be one of first impression in Connecticut. Courts in other jurisdictions have considered the problem of multiple judgments and have held that the earlier judgment prevails and the later judgment is a nullity, LawrenceSystems v. Superior Feeders, Inc., 880 S.W.2d 203, 210 (Tex.App. 1994); Hammet v. Lee, 730 S.W.2d 350, 351 (Tex.App. 1987);Aishman v. Taylor, 516 P.2d 244, 245 (Okla. 1973). The courts have reasoned that only one final judgment may be rendered in a given case, and the mere entry of a second judgment does not, per se, vacate the earlier judgment, Hammett v. Lee, supra; Aishman v.Taylor, supra. Unless the earlier judgment is void, as distinguished from voidable, it remains valid until vacated, modified, or reversed, Id.
The court adopts the reasoning of these cases and holds that, if Judge Hammer's judgment was a final judgment, it would prevail over Judge Rittenband's later judgment.
 II
The court must now determine whether Judge Hammer's decision was a final judgment.
In Connecticut, courts have devised numerous tests to define the finality of judgments. One test is whether the order or action terminates a separate and distinct proceeding, Monroe v. Monroe,177 Conn. 173, 176 (1979). Another test gauges whether the effect of an order concludes the rights of some or all of the parties, Id. The last test is "if the rights of the parties are concluded so that further proceedings cannot affect them, then the judgment is final," id.
In the present case, on September 28, 1993, Judge Hammer rendered a decision as follows: "[w]ith respect to the parcels set forth in the first count, the judgment shall be that the defendant will convey his right, title, and interest to the Main Street CT Page 9205 Property in Manchester, 263 Main Street to the plaintiff." In exchange, the plaintiff was ordered to convey her interest in corporate stock in property of 430 Silver Lane and "her right, title and interest in a certain condominium described as Pine Acres" to the defendant.
He further stated:
 [t]he execution of said deeds will take place forthwith and recording thereof will be held in escrow until such time as a determination may be made by an attorney trial referee as to certain accounting or adjustment disputes that still remain unresolved as between the parties. However, the result of the hearing should in no way . . . impede or impinge upon the stipulated judgment being entered this afternoon with respect to the transfer and ownership of the four parcels in question.
(Emphasis added.)
Thus, it appears that Judge Hammer's decision is a final judgment. Moreover, the analysis does not change because the judgment was entered into by agreement. "Although a stipulated judgment is in the nature of a contract, it is as conclusive as it had been rendered as an adjudication on the merits of contested facts," Foley v. Southport Manor Convalescent Center, Inc.,22 Conn. App. 530, 536 (1987). A court has no more power to modify or vacate a consent judgment or decree than it would have to modify a contract between two parties; Bank of Boston Connecticut v.DeGroff, 31 Conn. App. 253, 258 (1993) (concurring opinion). Therefore, because Judge Hammer's decision was final, following the holdings in Hammett v. Lee, supra; Aishman v. Taylor, supra, it appears that the later judgment rendered by Judge Rittenband is a nullity.
Consequently, the plaintiff is prohibited from conducting further proceedings to enforce that null judgment, Lawrence Systemsv. Superior Feeders, Inc., supra. The defendant has complied with Judge Hammer's earlier judgment, and the plaintiff's motion for contempt is, therefore, denied. CT Page 9206